No. 3208

Second Circuit

BRITTON v. STUDER ET AL.

(May 8, 1929. Opinion and Decree.)

W. F. Pipes, of Monroe, attorney for plaintiff, appellant.

Munholland and Munholland, of Monroe, attorneys for defendants, appellees.

ODOM, J. In the month of June, 1927, the plaintiff and defendants entered into a contract by the terms of which plaintiff sold to defendants certain standing timber at $3.50 per thousand feet. Defendants erected their mill on plaintiff's land and cut and removed timber therefrom until about the middle of September. By the present suit, plaintiff seeks to have the timber contract annulled on the ground that defendants have failed to comply with its provisions. He asked for and was granted a temporary restraining order prohibiting defendants from cutting and removing any more timber from the land until the further orders of the court. Defendants answered the suit on its merits, denying that they had breached the contract, and setting up, on the contrary, that they had carried out the contract to the letter, and asked that the temporary restraining order be dissolved and that plaintiff's suit be dismissed at his costs. On final trial, the court rejected plaintiff's demands and dismissed his suit. Plaintiff has appealed.

## OPINION.

As to the price of the timber and as to the payments, the contract contains the following stipulation:

"Three & 50/100 Dollars per thousand, settled every two weeks by log scale or lumber cut, at option of Britton, lumber cut left at place of sale of lumber."

The testimony makes it clear that up to the time of the filing of this suit, plaintiff had been paid for all of the timber cut and removed by defendants. Plaintiff does not seriously deny that; but the burden of his complaint is that he was not furnished with a statement showing the exact amount of lumber manufactured from the timber, and further, that the amount due him was not left at the place where the lumber was sold.

It seems that when defendants approached plaintiff with the view of purchasing his timber, he told them that he had had some trouble with relation to sales of timber and that he was not willing to accept their scale of the logs, and, furthermore, he was not willing to sell by log scale, but, on the contrary, wanted $3.50 per thousand feet of the lumber manufactured from his timber. The contract provides that he shall be paid by log scale or lumber cut at his option, and he chose the latter method of determining the amount due him, which was satisfactory with the defendants. The contract further provides that "lumber cut left at place of sale of lumber." There is some dispute as to what is meant by the latter clause, plaintiff claiming that it was understood that the price was to be left at the place where the lumber was sold; the defendants claiming that the understanding was that the amount of lumber manufactured, or a statement thereof, was to be left at the place where the lumber was sold.

From a reading of the contract itself, taken in connection with the testimony, we are convinced that it was never intended by the parties that the price was to be left with the purchasers of the lumber and paid by them to Britton. On the contrary, we think it was intended and understood by both parties that, in order to determine the amount of money due plaintiff, a statement of the amount of lumber sold should be made by those who purchased it and that plaintiff was to be paid by defendants a sum based upon this statement.

The testimony shows that all of the lumber manufactured from logs taken from plaintiff's land was sold to C. C. Bell Manufacturing Company, Slagle-Johnson Lumber Company, and the Chess-Wymond Company. These concerns did not issue to Britton, the plaintiff, statements showing the exact amount of lumber which they had purchased from defendants, but they did render to defendants invoices showing the exact amount they had purchased. These invoices, together with the books of the defendants, were exhibited to plaintiff, and, furthermore, when checks were drawn in his favor, a statement of the amount of lumber sold, as shown by the invoices, was attached to the check. As stated, Britton does not seriously contend that he was not paid all that was due him, but says that it was impossible for him to determine the exact amount of lumber sold. The testimony is clear enough that he did know the exact amount of lumber sold, because the invoices were exhibited, and, while he, himself, can neither read nor write, his son, who has some education and can read, write, and figure, took the invoices from time to time, looked over and checked them, and, on behalf of his father, approved them. Whereupon the plaintiff cashed the checks. The testimony further shows that plaintiff himself operated a motortruck and hauled to market prac-

tically all the lumber cut by the defendants, and that which was not hauled by him was hauled by a truck driver employed by one of the defendants, the testimony showing that the son of plaintiff and the other truck driver were hauling at the same time and that plaintiff's son was perfectly familiar with the amount of lumber hauled, both by himself and the other truck driver. So that plaintiff had a double check on the amount of lumber sold and to whom sold. The testimony satisfies us that Britton could have at any time gotten all the information he needed from the purchasers of the lumber. He visited at different times those concerns, but not with the view, as we understand it, of getting statements from them as to the amount of lumber sold, but mainly for the purpose of having them deduct from the price of the lumber sold the amount due him for stumpage. This request was refused, the reason given being that the purchasers did not care to become involved for the payment of stumpage. As already stated, we do not think it was intended by the parties that the purchasers of the lumber should actually pay plaintiff for the stumpage. The contract does not provide for that.

The testimony shows that at the time the suit was filed there was approximately 10,000 feet of lumber and a few sawlogs on the yards which had not been paid for. But, under the contract and under the agreement, the amount therefor could not be paid until the lumber was sold.

One of the defendants swore that plaintiff's only objection to proceeding with the contract was that he had been offered more for the timber and that he was going to try and have it set aside. Plaintiff did not take the stand in rebuttal and deny that he made that statement. Whether that was his real reason for filing this suit or not we do not know. But, from a reading of the testimony as a whole, in connection with the contract, our conclusion is that his demand for cancellation of the contract is unfounded, and that the judgment appealed from is correct.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be affirmed, with costs in both courts.